*NONCONFIDENTIAL VERSION*

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN**

Court No. 23-00157

**WABTEC CORPORATION,**

*Plaintiff*,

**and**

**STRATO, INC,**

*Consolidated Plaintiff*,

**v.**

**UNITED STATES,**

*Defendant*,

**and**

**COALITION OF FREIGHT COUPLER PRODUCERS,**

*Defendant-Intervenor*.

**U.S. INTERNATIONAL TRADE COMMISSION'S
NONCONFIDENTIAL OPPOSITION TO STRATO'S MOTION FOR REMAND**

MICHAEL K. HALDENSTEIN
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Telephone: (202) 205-3041
Facsimile: (202) 205-3111
michael.haldenstein@usitc.gov

ANDREA C. CASSON
Assistant General Counsel for Litigation
Telephone: (202) 205-3105
andrea.casson@usitc.gov

GARRETT L. PETERSON
Attorney-Advisor
Telephone: (202) 205-3241
garrett.peterson@usitc.gov

**DATED:  March 7, 2025**

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

BACKGROUND ......................................................................................................................1

INTRODUCTION ....................................................................................................................3

ARGUMENT ............................................................................................................................4

I.      The Court Should Deny Strato's Motion for Remand Because Strato's Motion is Based on an Untimely Claim ................................................................4

II.     The Court Should Deny Strato's Motion Because It Has Not Presented Clear and Convincing Evidence of Fraud ............................................................6

III.   CONCLUSION ...................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Alloy Piping Prods., Inc. v. United States*,
  26 CIT 330, 201 F. Supp. 2d 1267 (2002) ............................................................................... 7

*Ass'n of Am. Sch. Paper Suppliers v. United States*,
  34 CIT 31, 683 F. Supp. 2d 1317 (2010) ................................................................................. 7

*Beker Indus. Corp. v. United States*,
  7 CIT 313 (1984) ...................................................................................................................... 7

*Chemours Co. FC LLC v. United States*,
  393 F. Supp. 3d 1186 (Ct. Int'l Trade 2019) ................................................................. 3, 7, 8, 9

*Elkem Metals Co. v. United States*,
  26 CIT 234, 193 F. Supp. 2d 1314 (2002) ............................................................................. 12

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ................................................................................................ 8

*Home Prods. Int'l, Inc. v. United States*,
  633 F.3d 1369 (Fed. Cir. 2011) .......................................................................................... 8, 13

*Home Prods. Int'l, Inc. v. United States*,
  36 CIT 665, 837 F. Supp. 2d 1294 (2012) ............................................................................... 6

*Ipsco, Inc. v. United States*,
  13 CIT 489, 715 F. Supp. 1104 (1989) .................................................................................... 7

*KYD v. United States*,
  36 CIT 676, 836 F. Supp. 2d 1410 (2012) ............................................................................... 6

*Lifestyle Enter., Inc. v. United States*,
  36 CIT 1239, 865 F. Supp. 2d 1284 (2012) .......................................................................... 3, 6

*Linyi Chengen Imp. & Exp. Co., Ltd. v. United States*,
  658 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ............................................................................ 8

*Neuweg Fertigung GmbH v. United States*,
  16 CIT 724 , 797 F. Supp. 1020 (1989) ................................................................................... 7

*Novosteel SA v. United States*,
  284 F.3d 1261 (Fed. Cir. 2002) ............................................................................................ 3, 6

*Nucor Corp. v. United States*,
  28 CIT 188, 318 F. Supp. 2d 1207 (2004) ............................................................................... 7

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                        **Page(s)**

*Nucor Corp. v. United States*,
   32 CIT 1380, 594 F. Supp. 2d 1320 (2008) ..................................................................6

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993) ....................................................................................9

*SKF USA Inc. v. United States*,
   29 CIT 969, 391 F. Supp. 2d 1327 (2005) ....................................................................9

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ................................................................................6, 8

*Timken Co. v. United States*,
   38 CIT 670 (2014) ........................................................................................................6

*TMK IPSCO v. United States*,
   179 F. Supp. 3d 1328 (Ct. Int'l Trade 2016) ................................................................6

*United States v. Wunderlich*,
   342 U.S. 98 (1951) ........................................................................................................9

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Counc., Inc.*,
   435 U.S. 519 (1978) ....................................................................................................13

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ......................................................................................................7

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................................................................7

19 U.S.C. § 1516a(b)(2)(A)(i) ..................................................................................................7

**Legislative Materials**

S. Rep. No. 96–249, 96th Cong., 1st Sess. (1979) ..................................................................7

**U.S. International Trade Commission Publications**

*Certain Freight Rail Couplers and Parts Thereof from Mexico*,
   Inv. No 731-TA-1593 (Final), USITC Pub. 5470 (Nov. 2023) ..............................1, 5

*Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*,
   Inv. Nos. 303-TA-23, 731-TA-566-570, 731-TA-641, USITC Pub. 3218
   (Aug. 1999) ............................................................................................................12, 13

Pursuant to the Court's order issued on February 5, 2025 (ECF 55), Defendant United States International Trade Commission ("Commission") submits this response in opposition to the motion filed by Plaintiff, Strato. Inc. ("Strato") to remand the case to the Commission. Strato Mot. (ECF 51). For the reasons set forth below, we respectfully request that the Court deny Strato's motion.

## BACKGROUND

In July 2023, the Commission reached affirmative injury determinations with respect to certain freight rail couplers and parts thereof ("FRCs") from China found by the U.S. Department of Commerce ("Commerce") to be sold in the United States at less than fair value and subsidized by the government of China. *Certain Freight Rail Couplers and Parts Thereof from China*, Inv. No. 701-TA-682 and 731-TA-1592 (Final), USITC Pub. 5438 (Jul. 2023) ("*FRCs from China*") (PR190).[1] Subsequently, in November 2023, the Commission reached affirmative injury determinations with respect to imports of FRCs from Mexico found by Commerce to be sold in the United States at less than fair value. *Certain Freight Rail Couplers and Parts Thereof from Mexico*, Inv. No 731-TA-1593 (Final), USITC Pub. 5470 (Nov. 2023) ("*FRCs from Mexico*").[2]

---

[1] Citations to the public record are indicated by "PR," referring to list number 1 on the index of the administrative record, and citations to the confidential record are indicated by "CR," referring to list number 2 on the index of the administrative record.

[2] Although the petitions for the antidumping and countervailing duty investigations of FRCs from China and Mexico were filed on the same day, September 28, 2022, the investigation schedules became staggered when Commerce postponed its final determinations concerning *FRCs from Mexico* but not its final determinations concerning *FRCs from China*, thereby necessitating earlier final determinations in *FRCs from China*. *FRCs from China* at 3; *FRCs from Mexico* at 3.

1

On September 13, 2023, Strato filed a complaint in this Court to contest the Commission's final affirmative injury determinations in *FRCs from China*. Compl. in *Strato, Inc. v. United States*, No. 23-158 (Ct. Int'l Trade Sept. 13, 2023) (ECF 9). Strato alleged eight counts against the Commission's determinations, arguing that certain Commission findings were not supported by substantial evidence or otherwise in accordance with law. None of the eight counts, however, alleged or implied fraud by the domestic industry during the Commission's investigations. On January 31, 2024, Strato filed a joint motion with Wabtec Corporation ("Wabtec) and Amsted Company, Inc. ("Amsted") requesting the Court to consolidate *Strato, Inc. v. United States*, No. 23-158, *Wabtec Corp. v. United States*, No. 23-157, and *Amsted Co., Inc. v. United States*, No. 23-268. *See* Strato Mot. to Consolidate in *Strato, Inc. v. United States*, No. 23-158 (Ct. Int'l Trade Jan. 31, 2024) (ECF 27). On March 22, 2024, this Court consolidated *Strato* (No. 23-158) with *Wabtec* (No. 23-157), but declined, however, to consolidate those two cases with *Amsted* (No. 23-268). *See* Order in *Strato, Inc. v. United States*, No. 23-158 (Ct. Int'l Trade Mar. 22, 2032) (ECF 32). On August 16, 2024, Strato (jointly with Wabtec) filed a Rule 56.2 Motion for Judgement on the Agency Record ("Rule 56.2 motion"), (ECF 44-45), and again did not allege or imply fraud by the domestic industry during the Commission's investigations.

On January 31, 2025, Strato filed the subject motion and for the first time raised a fraud allegation against the domestic industry, including the domestic producer McConway & Torley LLC ("M&T") participating as Defendant-Intervenor in these proceedings. Strato Mot. at 1-2, 10-11. The allegations in Strato's motion also implicated domestic producer Amsted -- which itself, like Strato, opposes and challenges the Commission's affirmative injury determinations.

2

*Id.* at 4. Strato's motion asks the Court to remand the final determinations to the Commission and order the Commission to reconsider its determinations in light of the allegation. *Id.* at 1.

## INTRODUCTION

Strato's motion should be rejected on at least two grounds. **First**, Strato's claim is untimely. Even under its version of the facts, Strato acknowledges that it was aware that knuckles produced by Amsted and M&T no longer met AAR's specifications at least as early as November 9, 2023 – 16 months ago – when the Association of American Railroads ("AAR") made a formal announcement to the industry. *See* Strato Mot. at 4-5 & Appx. A (p. 18). Thus, Strato waited over a year to raise the allegation.

Strato's delay is even more egregious given that it failed to raise the fraud allegations in its Rule 56.2 motion, filed on August 16, 2024 – nine months after the AAR decision was made public, with no explanation for the delay. As reviewing courts have previously found, a party waives an argument that it does not present to the court "until after it ha{s} filed its principal summary judgment brief . . . {because} parties must give a trial court a fair opportunity to rule on an issue." *Lifestyle Enter., Inc. v. United States*, 36 CIT 1239, 1247-48, 865 F. Supp. 2d 1284, 1292 (2012) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

**Second**, delay and waiver aside, Strato fails to provide on the face of its request "clear and convincing" evidence of fraud by the domestic industry during the Commission's investigations warranting the extraordinary remand requested by Strato. As this Court has found, fraud is a serious allegation that requires "clear and convincing" evidence. *Chemours Co. FC LLC v. United States*, 393 F. Supp. 3d 1186, 1195 (Ct. Int'l Trade 2019). Strato's allegation, however, appears to be based on the incorrect assumption that the domestic producers knowingly sold non-AAR certified knuckles as AAR certified during the period analyzed in the Commission's investigations. The information available indicates that the domestic producers,

3

with substantial expertise in the matter, believed, and still believe, that their modified knuckles complied with AAR specifications. *See* M&T Resp. at 54-56, [ ] Decl. ¶¶ 6-8, & Atts. C-I & L (ECF 56-1 & 56-2). As the AAR routinely inspected M&T's modified knuckle pursuant to AAR standards, and the knuckle passed each inspection, the domestic producers had a reasonable basis for this belief. M&T Resp. at 54-56, [ ] Decl. ¶ 7-8, & Atts. C-I & L. Strato's claim that the domestic industry concealed its modified knuckle from the rest of the industry, including the AAR, was also contradicted by the information available. [ ] alluded to the modifications in reports submitted to the AAR, with at least one of the reports occurring before either domestic producer is alleged of selling the modified knuckle in the U.S. market. Strato Mot. at Appx. A (n.5 & pp.14-15), Exh. 1 (Allran Decl. ¶ 5), & Exh. 4 (Royer Decl. ¶¶ 6 & 8). Accordingly, the issue raised by Strato appears to be a commercial dispute between firms in the industry, and not a fraudulent scheme concocted by the domestic producers to sell non-AAR certified knuckles, such as to mislead the Commission in its antidumping and countervailing duty investigations.

For these reasons, we respectfully ask the Court to deny Strato's motion.

## ARGUMENT

**I.     The Court Should Deny Strato's Motion for Remand Because Strato's Motion Is Based on an Untimely Claim**

Strato could have timely raised its new allegation in the regular course of litigation with this Court but chose not to, which necessitates the denial of its motion.[3]

---

[3] For purposes of responding to Strato's motion, we have assumed the most favorable timeline for Strato, which would mean that industry participants were not fully aware of the domestic industry's sales of non-AAR certified knuckles in the U.S. market until the AAR's formal announcement in November 2023. We note, however, that the information provided by both Strato and M&T suggests that Strato may have been aware of the domestic industry's sales of its modified knuckles as early as June 2023 or September 2023 (approximately 18 to 21 months

4

BUSINESS PROPRIETARY INFORMATION
SUBJECT TO PROTECTIVE ORDER REDACTED

According to the extra-record information submitted by Strato, the freight rail industry was first made aware of the domestic industry's modified knuckle during a presentation by the domestic producers at a National Coal Transportation Association ("NCTA") conference immediately after the Commission closed its record for the subject investigations in June 2023. Strato Mot. at 4, Appx. A (p. 3 & 9), Exh. 2 (Gotlund Decl. ¶ 14), & Exh. 3 (Franz Decl. ¶ 3). Thereafter, an investigation conducted by the AAR, the certifying body of FRCs sold in the United States, found that the domestic industry began producing and selling the modified knuckle in the U.S. market as early as 2019. Strato Mot. at 4, Appx. A (p. 15) & Exh. 1 (Allran Decl. ¶ 12). On November 9, 2023, the AAR formally announced to the industry that the domestic industry's modified knuckle was not AAR certified. Strato Mot at 5, Appx. A (p. 18), & Exh. 2 (Gotlund Decl. ¶ 21). In the same month, the AAR directed the domestic producers to cease production of the modified knuckle and revert to producing AAR certified knuckles, and the domestic producers complied. Strato Mot. at 5, Appx. A (p. 19), Ex. 1 (Allran Decl. ¶ 19), Ex. 2 (Gotlund Decl. ¶ 21), & Exh. 3 (Franz Decl. ¶ 8). Since then, the AAR has conducted ongoing investigations into the performance and safety of the domestic industry's modified knuckle and tracked the domestic producers' compliance with its directive to cease production of the modified knuckle. Strato Mot. at 6-7 & Appx. A (p. 37-38).

---

ago). Indeed, it is possible that Strato may have known of the underlying concerns *before it filed its summons or complaint in this litigation* and before the Commission voted in the trailing investigation on *FRCs from Mexico.*

In addition, Strato could have raised the allegation when it moved to consolidate these proceedings with the *FRCs from Mexico* appeal. Had Strato done so, Amsted, the plaintiff in Court International Trade Case No. 23-268, would have had the opportunity to comment on Strato's serious allegation that it, along with M&T, committed fraud during the Commission's investigations. Strato Mot. at 4 & Appx. A (p. 3). In addition to Strato's belated allegations implicating Amsted's production, M&T has indicated that the same considerations stretch to ASF-K, a producer of FRCs in Mexico, which M&T believes was also producing and selling the modified knuckle. M&T Resp. at 52-53 & [      ] Decl. (¶¶ 9, 20) (ECF 57).

5

Notably, Strato had nine months between AAR's formal announcement on November 9, 2023, and the filing of its Rule 56.2 motion on August 16, 2024, to raise the issue with the Court by seeking leave to amend its complaint to include an allegation of fraud. Strato, however, failed to do so, and more importantly Strato failed to raise the allegation in its Rule 56.2 motion. Strato therefore waived the issue and has no legitimate basis to raise it at this late stage of the litigation. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."). As reviewing courts have found, a party waives an argument that it does not present to the court "until after it ha{s} filed its principal summary judgment brief . . . {because} parties must give a trial court a fair opportunity to rule on an issue." *Lifestyle Enter.*, 36 CIT at 1247-48, 865 F. Supp. 2d at 1292 (quoting *Novosteel*, 284 F.3d at 1274); *see also Nucor Corp. v. United States*, 32 CIT 1380, 1438 n.36, 594 F. Supp. 2d 1320, 1374 n.36 (2008) (the Court will not consider arguments that were not first raised in a party's moving papers); *Home Prods. Int'l, Inc. v. United States*, 36 CIT 665, 670-72, 837 F. Supp. 2d 1294, 1299-1300 (2012) ("*Home Products II*"); *TMK IPSCO v. United States*, 179 F. Supp. 3d 1328, 1355-56 (Ct. Int'l Trade 2016); *Timken Co. v. United States*, 38 CIT 670, 679 n.9 (2014) (citing *KYD v. United States*, 36 CIT 676, 677-79, 836 F. Supp. 2d 1410, 1413-14 (2012)).

Accordingly, the Court should deny Strato's motion for reconsideration because Strato did not timely raise its new allegation, and therefore waived the claim in this appeal.

## II.     The Court Should Deny Strato's Motion Because It Has Not Presented Clear and Convincing Evidence of Fraud

As detailed above, Strato is seeking a remand based on extra-record information that it has had access to for more than a year, during which it had multiple opportunities to present it to the Court, but for reasons unknown, decided against doing so.

6

It is a fundamental principle that this Court's review of the Commission's determinations is limited to the record before it, with only limited exceptions.  *See Chemours*, 393 F. Supp. 3d at 1191; *Nucor Corp. v. United States*, 28 CIT 188, 229, 318 F. Supp. 2d 1207, 1244 (2004).  Pursuant to 19 U.S.C. § 1516a(b)(1)(B), this Court must uphold the Commission's determinations unless they are "unsupported by substantial evidence <u>on the record</u>" or are "otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (emphasis added); *see also* S. Rep. No. 96–249, 96th Cong., 1st Sess., at 248 (1979) (if the administrative record is complete, the Court's review is limited to "the record made before the agency which issued the decision").  The statute goes on to define the "administrative record" for review as "all information presented to or obtained by the . . . Commission during the course of the administrative proceeding."  19 U.S.C. § 1516a(b)(2)(A)(i).

As a result of the above statutory provisions, this Court has consistently recognized that its review of the agency record "'is limited to the information that was presented to or obtained by the agency making the determination during the particular review proceeding for which section 116 authorizes judicial review.'"  *Neuweg Fertigung GmbH v. United States*, 16 CIT 724, 726, 797 F. Supp. 1020, 1022 (1989) (*quoting Beker Indus. Corp. v. United States*, 7 CIT 313, 316 (1984)); *Ipsco, Inc. v. United States*, 13 CIT 489, 494-95, 715 F. Supp. 1104, 1109 (1989) (under *Beker* the Court of International Trade defines "during the course of the administrative proceeding" as "during the particular review proceeding which results in the determination which is the subject of challenge"); *see also Chemours,* 393 F. Supp. 3d at 1191; *Nucor*, 318 F. Supp. at 1244*; Ass'n of Am. Sch. Paper Suppliers v. United States*, 34 CIT 31, 683 F. Supp. 2d 1317 (2010); *Alloy Piping Prods., Inc. v. United States*, 26 CIT 330, 201 F. Supp. 2d 1267 (2002).

In its motion for remand, Strato relies on the Federal Circuit's decision in *Home Products International, Inc. v. United States*, 633 F.3d 1369 (Fed. Cir. 2011) ("*Home Products I*"). *See* Strato Mot. at 2-3, 9-12, & Appx. A (p. 6-7). *Home Products I* recognizes, that while review of agency determinations generally must be based on the existing record, reopening of an administrative record or a remand for the consideration of new evidence may be appropriate "where a party brings to light clear and convincing new evidence sufficient to make a prima facie case that the agency proceedings under review were tainted by material fraud." 633 F.3d at 1378-79. This fraud exception to the "record rule" is not met in this case. Indeed, given the high importance of the "record rule" in the judicial review of agency determinations, reviewing courts have only recognized a "small number" of exceptions for application in "unusual circumstances, such as fraud or record inaccuracies." *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir. 2012); *Linyi Chengen Imp. and Exp. Co., Ltd. v. United States*, 658 F. Supp. 3d 1347, 1360 (Ct. Int'l Trade 2023).

First, the Court need not consider the sufficiency of evidence if it agrees that, under *SmithKline Beecham* and others, Strato has failed to timely raise, and therefore waived, its fraud claim (and any argument to supplement the record). While fraud can be an exception to the record rule, the evidence of fraud must be raised in a timely manner. If the evidence is raised too late, supplementation of the record with new evidence is inappropriate. *See Chemours*, 393 F. Supp. 3d at 1195 (denying motion for leave to supplement the record when alleged evidence of fraud could have been raised before the Commission). On this ground alone, the Court should deny Strato's motion because Strato did not timely raise its new allegation, and therefore waived the claim in this appeal.

Waiver aside, Plaintiff has also failed to provide the "clear and convincing" evidence of fraud that the fraud exception requires. This Court recognizes that "{f}raud is a serious allegation, one which concerns conduct that has been characterized as 'conscious wrongdoing, an intention to cheat or be dishonest.'" *Id.* at 1195 (quoting *United States v. Wunderlich*, 342 U.S. 98, 100, 72 S.Ct. 154 (1951)). As such, it has found that "a prima facie case of fraud in the agency proceedings must be established by clear and convincing evidence—more than a mere preponderance. Evidence is clear and convincing when it 'creates in the trier of fact an abiding conviction that the truth of a factual contention is highly probable.'" *Id*. (citing *SKF USA Inc. v. United States*, 29 CIT 969, 971, 391 F. Supp. 2d 1327, 1329 (2005), and quoting *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993)).

In *Chemours*, plaintiff Chemours sought to rely upon extra-record information and to have the case remanded to the Commission on the basis that such information showed "clear and convincing" evidence of fraud by a foreign producer during the Commission's investigations. *Chemours*, 393 F. Supp. 3d at 1191-92. Specifically, Chemours claimed that the foreign producer deliberately understated its capacity, production, and home market growth projection figures in the questionnaire response that it submitted to the Commission. *Id.* at 1195-99. This Court, however, found that the Chemours' claims were based on wrong assumptions, misstatements, or otherwise misplaced. *Id.* at 1195-2000. For example, in rejecting Chemours' argument that the foreign producer had understated its production capacity, this Court found that Chemours had wrongly assumed that the company produced the product 365 days per year. *Id.* at 1195-96. Accordingly, this Court found that Chemours did not present "clear and convincing" evidence that the producer made fraudulent statements during the Commission investigations. *Id.* at 1195-2000.

9

Similarly, the new allegation raised by Strato in these proceedings is based on the incorrect assumption that the domestic producers knew that their modified knuckles would be deemed not AAR certified, yet still marketed and sold the knuckles as though they were AAR certified. Both Strato's motion for reconsideration and M&T's response are replete with information contradicting Strato's assumption. Indeed, the information available indicates that the domestic producers had a good faith basis for believing that their modified knuckle met AAR specifications.

Specifically, the AAR specifications relevant to knuckles in the United States are the M-211, M-215, and M-216 standards. Strato Mot. at 4 & Appx. A (p. 3); M&T Resp. at 53-54 & [          ] Decl. ¶ 6. According to [                                        ], M&T [                                                                                                                                                                                    ]. M&T Resp. at 54 & [          ] Decl. ¶ 5. As [                                                                                                                                                            ]. And based on its expertise [                        ], M&T believed, and still believes, that its modified knuckle did not amount to a design change that required approval from the AAR. M&T Resp. at 61-62; *id.* at [          ] Decl. ¶ 6 & Att. D; *see also* Strato Mot. at Exh. 3 (Franz Decl. ¶ 7) ("[                                                                                                                ]."). It appears that [                                                                                                                                                                                        ]. M&T Resp. at Att. D ([          ] Email of Oct. 30, 2023).

The available information suggests that M&T had no reason to doubt its belief that its modified knuckle satisfied the requirements of the M-211 standard, as well as the M-216 standard, because the AAR inspected and passed the modified knuckle on the basis of these standards on multiple occasions. M&T's modified knuckles were annually inspected under the M-211 standard and triennially inspected under the M-216 standard since 2021, and the modified knuckle did not fail any of those inspections. M&T Resp. at 54-56, [ ] Decl. ¶¶ 7-8, & Atts. C-I & L.

Furthermore, contrary to Strato's claim, Strato Mot. at Appx. A (p. 1), there is no evidence indicating that the domestic industry attempted to conceal the modification from the AAR or other market participants. As Strato recognized, M&T received a patent for the modified knuckle in 2017, which was publicly available to any interested party, and [

                                                                                 

                            ]. Strato Mot. at Appx. A (n.5 & pp.14-15), Exh. 1 (Allran Decl. ¶ 5), & Exh. 4 (Royer Decl. ¶¶ 6, 8). M&T also informed [

                                                        ]. M&T Resp. at Att. D.

Furthermore, Strato acknowledges that in June 2023, representatives of M&T and Amsted publicly presented slides at an industry conference describing their enhanced knuckles. Strato Mot. at Exh. 2 (Gotlund Decl. ¶ 15). The domestic producers' joint presentation highlighted claimed improvements in their knuckle design. *See Id.* at Exh. 2 (Att. A) ("Increase Coupler Performance thru Improved Engagement of the Pulling Surfaces" presented by Joe Gagliardino Director of Engineering & Quality, M&T and Matt Todt, Manager, Product Engineering, Amsted Rail – ASF). This public presentation refutes Strato's claim that the two domestic producers were concealing the change to their knuckles. On the other hand, Strato has

presented no evidence of concealment, that Amsted and M&T knowingly sold knuckles that were not AAR-approved, or that they sought to mislead the Commission by making material misstatements of fact.

Strato attempts to draw connections between these proceedings and the one instance in which the Commission self-initiated a reconsideration proceeding, *i.e.*, in investigations concerning *Ferrosilicon*. Strato Mot. at Appx. A (p. 38-39) (citing *Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela*, Inv. Nos. 303-TA-23, 731-TA-566-570, 731-TA-641, USITC Pub. 3218, at 6-8 (Aug. 1999) (Reconsideration)) ("*Ferrosilicon Reconsideration*"), *remanded by Elkem Metals Co. v. United States*, 26 CIT 234, 193 F. Supp. 2d 1314 (2002)). There are, however, stark differences between the information that drove the Commission's *Ferrosilicon Reconsideration* and the extra-record information submitted by Strato in these proceedings.

In the Commission's *Ferrosilicon Reconsideration*, it was undisputed, and the U.S. Department of Justice in fact found, that the domestic producers participated in a price-fixing scheme during the period analyzed in the Commission's reconsideration. Two U.S. producers had pleaded guilty to conspiring to fix prices in the ferrosilicon market while another was convicted of the conspiracy. *See Ferrosilicon Reconsideration* at 10. The Commission found that testimony in the criminal investigation revealed that statements made by those three U.S. producers during the Commission's original investigations were either false or highly misleading. *Id.* at 16-17. Notably, the U.S. producers had "actively advocated" that the U.S. ferrosilicon market was driven by unfettered price competition. *Id.* at 3. Moreover, the price-fixing conspiracy undermined the Commission's analysis. For example, the Commission found that "the domestic producers' own efforts to establish a floor price and thereby raise domestic

prices above market levels undermine the significance of the observed underselling." *Id.* at 28. There was also evidence of concealment, as none of the U.S. producers that were convicted of conspiring to fix prices, nor two U.S. producers that appeared to be aware of the price fixing scheme, revealed the true conditions of the market to the Commission during the original investigations. *Id.* at 17-18. In contrast, Strato has provided no direct evidence of a scheme developed by the domestic industry to sell non-AAR knuckles as AAR knuckles or evidence that the domestic industry concealed its modified knuckle from the AAR or other market participants.

Because Strato has not provided "clear and convincing" evidence of fraud, an element of the exception to the "record rule" outlined in *Home Products I*, it is essentially "{d}emand{ing a} rehearing{} as a matter of law" based on "some new fact discovered," which does not justify reopening the investigation and robbing the Commission's determinations of their finality. *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 554-55 (1978). On this basis, this Court should deny Strato's motion to remand the case to the Commission for reconsideration.

Further, the caselaw does not support Strato's contention that the Commission should be ordered to reopen and reconsider its determination if the Court were to find that Strato has made a *prima facie* showing that the Commission's proceedings were tainted by material fraud. In *Home Products I,* the Federal Circuit stated that "{i}n ordering that the case be remanded to Commerce, we express no opinion as to whether Commerce must exercise its authority to reopen; nor do we mandate a finding of fraud." *Home Products I,* 633 F.3d at 1381. The Court went on to list factors Commerce should consider in deciding whether to reopen the proceedings. For this reason, the Court need not rule on this motion until it rules on Strato's Rule 56.2 motion which also seeks a remand of the Commission's determinations.

### III. Conclusion

For the foregoing reasons, the Court should deny Strato's motion for remand of the case to the Commission for reconsideration.

                                                      Respectfully submitted,

                                                     Andrea C. Casson
                                                     Assistant General Counsel for Litigation

                                                     */s/ Michael K. Haldenstein*
                                                     Michael K. Haldenstein
                                                     Garrett L. Peterson
                                                     Attorney-Advisors
                                                     Office of the General Counsel
                                                     U.S. International Trade Commission
                                                     500 E Street, SW
                                                     Washington, DC 20436
                                                     Telephone: (202) 205-3041
                                                     michael.haldenstein@usitc.gov

                                                     *Attorneys for Defendant United States International Trade Commission*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached **U.S. INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL OPPOSITION TO STRATO'S MOTION FOR REMAND** contains 4,312 words, according to the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010).

Dated: March 7, 2025              */s/ Michael K. Haldenstein*
                                  Michael K. Haldenstein
                                  Attorney-Advisor
                                  Office of the General Counsel
                                  U.S. International Trade Commission
                                  500 E Street, SW
                                  Washington, DC 20436
                                  Telephone: (202) 205-3041
                                  Facsimile: (202) 205-3111
                                  michael.haldenstein@usitc.gov