**Consol. Ct. No. 23–00157**                                                  **PUBLIC DOCUMENT**

### UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| WABTEC CORPORATION and STRATO INC., <br><br> Plaintiff/Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COALITION OF FREIGHT COUPLER PRODUCTS, <br><br> Defendant-Intervenor. | Consol. Court No. 23-00157 <br><br> **<u>PUBLIC DOCUMENT</u>** |

### <u>PLAINTIFFS' POST-ARGUMENT SUBMISSION</u>

The ITC's exercise of Section 1677(4)(B) authority to determine whether related parties are part of the "industry" must be consistent with the "statutory purpose." *Doty v. United States*, 53 F.3d 1244, 1250 (Fed. Cir. 1995). The provision aims "to exclude … domestic producers substantially benefitting from their relationships with foreign exporters." *Wabtec Corp. v. United States* ("*FRC*"), 805 F.Supp.3d 1326, 1344 (CIT 2025) (cleaned up). Producers who gain such a "benefit from their relation to the subject imports *are properly excluded*." *Empire Plow Co. v. United States*, 11 CIT 847, 853 (1987) (citation omitted; emphasis added). Like Amsted here.

This conclusion flows first from the statutory text. Unlike other provisions, which simply let the agency determine when an action is appropriate, *e.g.*, 19 U.S.C. §1677(18)(B)(iv), (23), (36)(D), Section 1677(4)(B) flags that exclusion might be appropriate when "there is reason to believe that" the producer's "relationship" with an importer "causes the producer to act differently than a nonrelated producer," §1677(4)(B)(ii)(IV). Congress "enacted {§1677(4)(B)} so that

1

domestic producers whose interests in the imports were strong enough to cause them to act against the domestic industry would be excluded from" the material-injury inquiry. *USEC, Inc. v. United States*, 25 CIT 49, 61 (2001). Similarly, the legislative history gives "an example of an appropriate case in which" the ITC "*should … exclude*{}" a related party. *Fujifilm N. Am. Corp. v. United States*, 821 F.Supp.3d 1373, 1379 (CIT 2026) (emphasis added) (citing S.Rep. 96-249, 1979 U.S.C.C.A.N. 381, 469 (domestic producer "should be" excluded when imports from related company are directed "so as not to compete" with it)). When a related producer benefits from subject imports so as to be "shielded from the{ir} effects," the company does not accurately reflect the impact of subject imports, and its inclusion would "distort{}" the "industry data." SAA, 1994 U.S.C.C.A.N. 4040, 4190. Commerce's parallel implementation of §1677(4)(B) confirms this purpose: It "utilize{s}" §1677(4)(B) "to eliminate any conflicts of interest that may distort its consideration of the level of industry support for an antidumping or countervailing duty petition." *Id.*

The ITC must apply §1677(4)(B) "within the constraints of the statute and record." *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086 (Fed. Cir. 2025). To execute this mandate, the ITC has, with this Court's ratification, looked to five factors to uncover whether the related party's interests are at odds with those of the domestic industry so as to lead it to act differently. *See, e.g.*, *Sandvik AB v. United States*, 13 CIT 738, 748 (1989); *Allied Mineral Prods., Inc. v. United States*, 28 CIT 1861, 1865 (2004). Indeed, the decisions cited in footnotes 44-45 of Commissioner Kearns's Remand Views ("RV") apply all five factors, with an eye toward determining that. At minimum, the ITC must act "consistent{ly} with" this "mode of analysis." *Cleo Inc. v. United States*, 501 F.3d 1291, 1299 (Fed. Cir. 2007); *see FRC* 1346; *Fujifilm*, 821 F.Supp.3d at 1379.

Instead, Commissioner Kearns baldly asserted that "Commissioners are not required to apply the same analytical methodologies in their decision-making" and adopted a new test that he acknowledged others may not share and that "may evolve further over time." RV10 n.36. His novel test departed from the statutory purpose in multiple ways, all of which twisted his analysis toward including Amsted.

*First,* Commissioner Kearns transmogrified "the most significant factor"—whether Amsted benefits from subject imports—away from the question whether Amsted as a company receives a benefit that would lead it to act differently from the rest of the industry and into a blinkered focus on the arguable benefit to workers in one small part of one Amsted plant. *FRC* 1347; *see* RV21-27. He justified this alteration by pointing to the *material-injury* analysis. *See* §1677(7). But the two inquiries are textually distinct, not to be collapsed together. Pls.' Supp. Br. 7-8; *see also* 1979 U.S.C.C.A.N. at 468-70 (indicating that the domestic-industry and material-injury analyses are sequential and there is no reason to focus only on the like product at the first step). Indeed, Commissioner Kearns elsewhere recognized that a domestic producer who decides "it would be more efficient and cost-effective" to produce one product in the United States "and import the other" would properly be excluded. RV16-17. That is Amsted. *See* Separate Views ("SV") 3 (considering Amsted's bundling with "other rail products" produced domestically).

*Second,* Commissioner Kearns ignored another key factor—Amsted's interest in imports— that "provides important context" for the statutory inquiry whether Amsted is likely to act differently. *FRC* 1347. Indeed, he conceded that "a *firm* with a primary interest in importation," as Amsted indisputably has, "generally should be excluded"—but then declined to exclude that firm. RV30 (emphasis added).

3

*Third,* Commissioner Kearns reduced key factors indicating whether a related party will act differently into thresholds, lacking independent weight. *Id.* at 12-13. For example, a related party with a high ratio of subject imports to domestic production is unlikely to have a common stake with the domestic industry. *See* 1994 U.S.C.C.A.N. at 4190. And Amsted's was "high throughout," which "independently support{s} exclusion." *FRC* 1347; *contra* RV13.

*Fourth,* Commissioner Kearns openly redefined the third factor: whether inclusion or exclusion would "skew the domestic industry data" for the rest of the industry. *FRC* 1346. Traditionally, that inquiry has supplemented the central questions whether a related party is substantially benefitting from or has an interest in imports. If a company is using imports to bolster its domestic production—or if it is replacing domestic production with imports for business reasons unrelated to subject import competition—its inclusion would distort the data and therefore the analysis of material injury. And it is inherent in "skew" that distortion could go either way. *Fujifilm*, for instance, explains that a company withdrawing its domestic production "as part of a global relocation strategy" was "very similar" to the example in the legislative history of a related party whose inclusion would skew the data. 821 F.Supp.3d at 1379 (citing 1979 U.S.C.C.A.N. at 469); *see also* SAA 858 (explaining that "inclusion in the domestic industry" of such a company would cause "distortion in industry data"); SV4-5.

Commissioner Kearns, however, changed the question of skew into just asking whether exclusion "would *mask injury*," and then exalted that redefined factor to "the *ultimate* question." RV14-15 (emphases added). He thus both substituted in a results-oriented standard for defining the industry, *id.* at 12, and collapsed the definitional question into the material-injury question. Congress did not adopt such a gerrymandered inquiry. *Cf. FRC* 1345-46, 1349.

Commissioner Kearns's assertion that excluding Amsted masks injury also undermines the Commission's material-injury determination. RV28. For one, it casts doubt on the injury analysis of Commissioner Karpel, who excluded Amsted. Further, "the statute prevents the ITC from attributing to subject imports an injury whose cause lies elsewhere." *Hynix Semiconductors Inc. v. United States*, 30 CIT 1208, 1222 (2006). If including Amsted is essential to show injury, the ITC must reckon with what *caused* Amsted's injury: not subject imports, but rather a business decision to concentrate FRC production in Mexico while producing at Granite City "'other rail products' that are bundled with FRCs." RV24; *see also* MJAR 29-31 (ECF 44); Reply 21-23 (ECF 70).

"{T}he record supports only one outcome" here: Amsted's exclusion. *NEXTEEL Co. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2022). The Court should remand for the ITC to determine material injury against a domestic industry defined to exclude Amsted. At minimum, the Court should remand for the ITC to reconsider whether to exclude Amsted under a proper approach.

Dated: July 8, 2026

Respectfully submitted,

*/s/ C. Kevin Marshall*
C. Kevin Marshall
Hannah Templin
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
202.879.3851
ckmarshall@jonesday.com

*Counsel for Wabtec Corporation*

*/s/ Andrew T. Schutz*
Andrew T. Schutz
Ned H. Marshak
GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
1201 New York Ave. NW #650
Washington, D.C. 20005
202.783.6881
aschutz@gdlsk.com

*Counsel for Strato Inc.*

*/s/ James M. Smith*
James M. Smith
Sooan (Vivian) Choi
Wanyu Zhang
John Catalfamo
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, D.C. 20001
202.662.5550
jmsmith@cov.com

*Counsel for Strato Inc.*