## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **WABTEC CORPORATION and STRATO INC.,**<br><br>                    **Plaintiff/Consolidated Plaintiff**<br><br>     **v.**<br><br>**UNITED STATES,**<br><br>                    **Defendant,**<br><br>   **and,**<br><br>**COALITION OF FREIGHT COUPLER PRODUCERS,**<br>                    **Defendant-Intervenor.** | **Before: Hon. Gary S. Katzmann, Judge**<br><br>**Court No. 23-00157** |

## POST-ARGUMENT SUBMISSION

Defendant-Intervenor hereby submits these additional comments following oral argument in the above-captioned case, consistent with the Court's Order of June 24, 2026. ECF 147.

**I.     IT IS APPROPRIATE AND REASONABLE THAT THE COMMISSION FOCUSED ON THE DOMESTIC LIKE PRODUCT WHEN EXERCISING ITS DISCRETION**

As an initial and fundamental point, the statute clearly includes all domestic producers in the domestic industry definition. 19 U.S.C. § 1677(4)(A). There is <u>no</u> statutory obligation to exclude any domestic producer, but rather any such exclusion is made solely at the discretion of the Commission. In other words, the Commission is never obligated to exclude a company but may do so with its discretion. In exercising this discretion, the Commission's decision to focus on the domestic like product in the context of related parties was supported by the statute itself: "{i}f a producer of *a domestic like product* and an exporter or importer of the subject merchandise are related parties, or if a producer of the *domestic like product* is also an importer of the subject merchandise, the producer may, in appropriate circumstances, be excluded from the industry." 19

U.S.C. § 1677(4)(B)(i) (emphasis added). The Act also defines the domestic industry to mean "the producers as a whole of a *domestic like product*, or those producers whose collective output of a *domestic like product* constitutes a major proportion of the total domestic production of the product." 19 U.S.C. § 1677(4)(A) (emphasis added). The domestic like product is the central focus when defining the domestic industry. Thus, as supported by statute, inclusion or exclusion of a related producer from the domestic industry is based on the domestic like product. This Court confirmed the Commission's focus on the domestic like product in the related parties analysis in *Changzhou Trina Solar Energy Co., Ltd., v. U.S. International Trade Commission*, stating "{t}o support its determination, the Commission relied on record evidence that indicated that {the related party}'s interests rested primarily with . . . importation . . . rather than with *domestic production of the domestic like product*." 100 F. Supp. 3d 1314, 1329 (Ct. Int'l Trade 2015) (emphasis added). Consistent with this approach, Commissioner Kearns analyzed Amsted and its domestic production of FRCs at the Granite City facility appropriately.

Not only was this the appropriate analysis, but the Commission's determination need only be supported by substantial evidence and otherwise be in accordance with law to withstand judicial review. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). While Plaintiffs may disagree with the Commission's approach with regard to examining only the domestic like product, they have not demonstrated either in their papers or before the Court that this approach not supported by substantial evidence or otherwise not in accordance with law. Indeed, that the definition of the domestic industry, upon which the related parties provision is premised, is the "producers as a whole of a domestic like product," 19 U.S.C. § 1677(4)(A), further demonstrates that the Commission's review of only the domestic like product is eminently reasonable.

## II.    AMSTED'S WORKERS WERE CO-PETITIONERS AND DESERVE TO BE REPRESENTED IN THE DOMESTIC INDUSTRY

The United Steelworkers ("USW") representing Amsted's U.S. workers were co-petitioners in this investigation, and their injury due to import competition should not be excluded from the record.

The Court has recognized that "The most significant factor . . . in making the 'appropriate circumstances' determination {in the related party analysis} is whether the domestic producer accrued a substantial benefit from its important of the subject merchandise." *Allied Mineral Products, Inc. v. United States*, 28 C.I.T. 1861, 1864 (2004). Indeed, this is the touchstone of the Remand Views. Commissioner Kearns's analysis is focused on "whether inclusion of a related party in the domestic industry could mask injury." *See* Remand Views at 16, ECF 117/118. The Commission's Remand Views acknowledge that, "{B}ecause Amsted's subject imports from Mexico *substantially harmed* its domestic FRC workers and FRC operations in Granite City, its exclusion would inappropriately mask injury to the domestic industry." *Id.* at 7.

Additionally, as the Remand Views make clear, Amsted's domestic production was harmed by its related subject imports from Mexico. USW jobs were lost at Amsted's Granite City facility as Amsted's imports from Mexico gained market share at the expense of its domestic FRCs operation.  As Commissioner Kearns noted, exclusion of Amsted would essentially erase those job losses from the record. *Id.* at 8.

As Commissioner Kearns also noted:

Job losses like that matter in any AD/CVD investigation. But in these investigations, those Amsted jobs were held by workers represented by the Steelworkers, a labor organization of the type that Congress granted standing to petition for relief (independent of the domestic producer that employs its members) and that in fact did petition for relief in this case. Excluding Amsted would therefore mean ignoring the job losses of a petitioner in these investigations.

3

*Id.* at 8-9. If Amsted was excluded as a related party, it would remove a co-petitioner, the USW, from having its evidence of injury even considered by the agency. This would be an injustice. [1]

### III. THE COURT REVIEWS AGENCY DETERMINATIONS FOR REASONABLENESS AND DOES NOT REWEIGH RECORD EVIDENCE

At the close of the hearing, Counsel for Plaintiff Wabtec made clear that what they are truly seeking is for the Court to inappropriately re-weigh the evidence of record. In discussing the sworn testimony of the labor union representing the workers, Plaintiff's counsel argued that he disputed the probative value that the Commission afforded the testimony and that in Plaintiff's view, "All of that . . . I think goes to how much weight it deserves in terms of the Court's evaluation." Oral Argument Transcript, ECF 148 at 45 (emphasis added). The Court does not reweigh record evidence; its role in reviewing a final agency determination is to assess whether the determination was "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The Court of Appeals for the Federal Circuit has said that, "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *OSI Pharmaceuticals, LLC v. Apotex Inc.*, 939 F.3d 1375, 1381 (Fed. Cir. 2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Remand Views addressed the Court's remand instructions, and, upon review of the related party factors, it was reasonable for the Commission to have included Amsted – and its workers – in the domestic industry.

---

[1] For the Court's convenience, we have attached to this submission the testimonies both of Ms. Roxanne Brown, International Vice President of the United Steelworkers Union, which was presented to the Commission in the final phase of the underlying investigation, PR 136 at 30-33, at **Attachment 1**, and of Mr. Antonio Wellmaker, President of USW Local 1063, which was added to the record in the underlying investigation in Petitioner's Prehearing Brief, PR136/CR143 at Exhibit 6, at **Attachment 2**. We note that, while the testimony quotes provided were included in the Remand Views, they were not included in the joint appendix provided to the Court on April 27, 2026, ECF 130/131, and counsel to Defendant-Intervenor was not afforded an opportunity to confer with Plaintiffs' counsel before that joint appendix was filed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court affirm the Commission's

Remand Views.

Respectfully submitted,

*/s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7000
daniel.pickard@bipc.com

*Counsel to Defendant-Intervenor Coalition
of Freight Coupler Producers*

Dated: July 8, 2026

5

## **CERTIFICATION OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(2) of the Standard Chambers Procedures of this Court and the Court's Order of June 24, 2026, ECF No. 147, that the post-argument submission contains no more than 1,212 words, excluding any table of contents, any table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

Dated: July 8, 2026

*/s/ Claire M. Webster*
Claire M. Webster

# ATTACHMENT 1

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

```
In the Matter of:              )
                               )  Investigation Nos.:
FREIGHT RAIL COUPLERS AND      )  701-TA-682 and
PARTS THEREOF FROM CHINA AND   )  731-TA-1592-1593 (Final)
MEXICO                         )
```

```
Pages:  1 through 235

Place:  Washington, D.C.

Date:   May 18, 2023
```

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C. 20005
(202) 628-4888
contracts@hrccourtreporters.com

1

THE UNITED STATES INTERNATIONAL TRADE COMMISSION

In the Matter of:          )
                           )   Investigation Nos.:
FREIGHT RAIL COUPLERS AND  )   701-TA-682 and
PARTS THEREOF FROM CHINA AND )  731-TA-1592-1593 (Final)
MEXICO                     )

                                Thursday,
                                May 18, 2023

                                Room 101
                                U.S. International
                                Trade Commission
                                500 E Street, S.W.
                                Washington, D.C.


        The hearing commenced, pursuant to notice,

at 10:45 a.m., before the Commissioners of the

United States International Trade Commission, the

Honorable DAVID S. JOHANSON, Chairman, presiding.

        APPEARANCES:

        On behalf of the International Trade Commission:

        Commissioners:

        DAVID S. JOHANSON, Chairman
        RHONDA K. SCHMIDTLEIN
        JASON E. KEARNS, Commissioner
        AMY A. KARPEL, Commissioner

        Staff:

        TYRELL BURCH, Management Analyst
        SHARON BELLAMY, Acting Supervisory Hearings and
          Information Management Specialist

        AHDIA BAVARI, Investigator
        MITCHELL A. SEMANIK, International Trade Analyst
        JOHN BENEDETTO, International Economist
        ZAHRA BEKKAL, Accountant-Auditor
        JASON WANG, Statistician
        MICHAEL HALDENSTEIN, Attorney-Advisor
        ELIZABETH HAINES, Supervisory Investigator

2

I N D E X

OPENING REMARKS:                                                    PAGE:

In Support of Imposition (Daniel B. Pickard,          6
Buchanan Ingersoll & Rooney PC)
In Opposition to Imposition (Douglas J. Heffner,     10
Faegre Drinker Biddle & Reath LLP)

In Support of the Imposition of
  Antidumping and Countervailing Duty Orders:

Buchanan Ingersoll & Rooney PC
Washington, DC
on behalf of

Coalition of Freight Coupler Producers

        Scott Mautino, Executive Vice President,       13
          McConway & Torley, LLC

        Chris LeFevre, Director of Sales, McConway &    22
          Torley, LLC

        Roxanne Brown, International Vice President     30
          at Large, United Steel, Paper and Forestry,
          Rubber, Manufacturing, Energy, Allied
          Industrial and Service Workers
          International Union

        Dr. Seth T. Kaplan, Economist, International    40
          Economic Research

        Travis Pope, Project Manager, Capital Trade,    --
          Inc.

                Daniel B. Pickard  )
                Amanda L. Wetzel   ) - OF COUNSEL
                Claire M. Webster  )

Heritage Reporting Corporation
(202) 628-4888

3

I N D E X

PAGE:

In Opposition to the Imposition of
  Antidumping Duty Orders and Countervailing Duty Orders:

Faegre Drinker Biddle & Reath LLP
Washington, DC
on behalf of

Amsted Rail Company, Inc.
ASF-K de Mexico S. de R.L. de C.V.

        Robert Oesch, Vice President Global Marketing    117
          & Customer Service, Amsted Rail Company,
          Inc.

        Jack Cumming, Vice President – Finance,          121
          Amsted Rail Company, Inc.

        Jim Dougan, Partner, ION Economics, LLC          141

        Cara Groden, Senior Economic Consultant, ION     --
          Economics, LLC


              Douglas J. Heffner        )
              Richard P. Ferrin         ) - OF COUNSEL
          Carrie Bethea Connolly )


Jones Day
Washington, DC
on behalf of

Strato Inc. ("Strato")

        Brian Cunkelman, President, Strato Inc.          135

        Dan Foxx, CIO, Strato Inc.                       --

              Ned H. Marshak            )
                                        ) - OF COUNSEL
              Andrew T. Schutz          )

30

the nation's ability to maintain production of key components in America's supply chain.  Thank you.

MS. BROWN:  Good morning.  My name is Roxanne Brown, and I am International Vice President of the United Steelworker's Union.  Our long name is the United Steel, Paper, and Forestry Rubber Manufacturing Energy Allied Industrial Service Workers Union.

USW is the largest industrial union in North America, representing 1.2 million active and retired members, with the mission to protect and advance the interests of American workers, including the interests of our members who will be impacted by the Commission's decision in this investigation.

I'm appearing before the ITC today to testify in-support of our petition for antidumping and countervailing duty relief against imports from China and Mexico.  USW is a member of the coalition of freight coupler producers because hundreds of steelworkers at Amsted Rail Company's Granite City, Illinois, manufacturing facility are members of USW Local 1063.

I am extremely concerned about the welfare and livelihoods of our USW members at Granite City.  As the Commission knows, Amsted was originally a member of the petitioning coalition in the case against China, but then dropped-out within days of filing the case.  Our union

31

decided to step-up and replace Amsted as a member of the coalition.

I was, and am now, troubled by Amsted's decision to not fight for its workers who are facing unfairly priced imports from China.  I am also troubled, and was troubled, to discover that, as the Commission determined, it was Amsted's Mexican operations that were the lowest-priced product in the United States, even underselling the Chinese couplers.

I am particularly disappointed that Amsted is now defending both its Mexican operations, and also the dumped and subsidized imports from China.  Amsted's actions appear to demonstrate that its interests are greater in their import operations than in their U.S. production.

Amsted's apparent concession that they are more interested in producing in Mexico than in supporting their U.S. workers is important to essentially every factor in the Commission's threat determination.  Specifically, Amsted's decision to prioritize Mexican production is relevant in regard to likely increases in production, likely increased exports to the United States and, very, very importantly, likely effect on USW workers.

USW and McConway read the Commission's final determination in FRC-1 and understood that part of the reason the Commission reached a negative determination was because of the impact of Mexican freight rail coupler imports on the

32

U.S. market.  Upon consultation with the coalition's counsel, USW understood that a second petition could be filed with the Commission and Commerce against both China and Mexico.

We supported the re-filing of the petition then, and we continue to support relief for American workers now. In the preceding investigation, you heard public testimony from a representative of USW Local 1063 in Granite City, Illinois.  He spoke about the skilled freight rail coupler workers in Granite City who want to work to support their families and keep good-paying union jobs.  He testified about the injury to the workers due to Chinese imports.  He also testified about jobs moving from Illinois to Mexico.

Now, in this case, I have spoken with members of Local 1063 and I know that this case has already benefitted them.  They've told me that Amsted management has admitted that the trade case will be good for Granite City. Currently, Amsted is hiring more production workers at the Granite City facility, and with an affirmative determination, I have full confidence that this will lead to more good-paying union jobs in the United States.

USW stands up for the interests of our members. One of the steelworkers' founding principles is to increase the wages and improve the conditions of employment for our members.  More jobs with better wages and improved conditions can happen if the Commission votes affirmatively.

Accordingly, I am asking, on behalf of our members at Local 1063, that the Commission make a determination that Chinese and Mexican imports are injuring the U.S. industry and its workers.

Thank you.

MR. PICKARD:  Thank you, Roxanne.  Again, for the record, this is Dan Pickard of Buchannan.  If we could get the PowerPoint slides up?  Great.

Commissioners, unlike a typical petitioner counsel presentation which is a recitation of the major conditions of competition and repeating the major findings from the appendix C, what I'd like to do in this presentation for probably the next 10 minutes or so are to discuss the five major theories put forward by the Respondents in regard to a lack of causation between the presence of imports in the marketplace and the health of the domestic industry, and then I'm going to turn to my colleague, Dr. Kaplan, to address some of the economic issues involved.

So if we could go to the first slide?  As I indicated in my opening statement, certain facts are not in-dispute during this case.  There are a large amount of subject imports in the marketplace throughout the POI -- a larger amount both absolutely and by share as compared to the previous investigation.

The underselling is clear.  There's significant

# ATTACHMENT 2

THE UNITED STATES INTERNATIONAL TRADE COMMISSION

In the Matter of:              )
                               )
FREIGHT RAIL COUPLER           ) Investigation Nos.:
SYSTEMS AND COMPONENTS         ) 701-TA-670 and
FROM CHINA                     ) 731-TA-1570 (Preliminary)
                               )

                                   Wednesday,
                                   October 20, 2021

                                   Videoconference
                                   U.S. International
                                   Trade Commission
                                   500 E Street, S.W.
                                   Washington, D.C.

         The hearing commenced remotely, pursuant to

notice, at 9:30 a.m., before the Commissioners of the

United States International Trade Commission, the

Honorable NANNETTE CHRIST, Director, presiding.

APPEARANCES:

   On Behalf of the International Trade Commission:

         Staff:

         NANNETTE CHRIST, Director, Office of
           Investigations
         ELIZABETH HAINES, Supervisory Investigator
         STAMEN BORISSON, Investigator
         MITCHELL SEMANIK, International Trade Analyst
         KYLE WESTMORELAND, Economist
         ZAHRA BEKKAL, Accountant/Auditor
         LITA DAVID-HARRIS, Statistical Analyst
         DAVID GOLDFINE, Attorney/Advisor

         WILLIAM R. BISHOP, Supervisory Hearings and
           Information Officer
         TYRELL BURCH, Management Anaylst

2

I  N  D  E  X

OPENING REMARKS:                                          PAGE:

In Support of Imposition (Daniel B. Pickard,        5
Wiley Rein LLP)
In Opposition to Imposition (David Morrell,         9
Jones Day)


In Support of the Imposition of
   Antidumping and Countervailing Duty Orders:

Wiley Rein LLP
Washington, D.C.
on behalf of

Coalition of Freight Coupler Producers

        Chris Lefevre, Director of Sales, McConway    19
           & Torley, LLC

        Scott Mautino, Executive Vice President,      13
           McConway & Torley, LLC

        Antonio Wellmaker, USW (President of USW       31
           Local 1063)

        Amy E. Sherman, International Trade Analyst,   --
           Wiley Rein LLP

              Daniel B. Pickard          )
              Robert E. DeFrancesco, III ) - OF COUNSEL
              Jake R. Frischknecht       )

3

In Opposition to the Imposition of                    PAGE:
  Antidumping and Countervailing Duty Orders:

Jones Day
Washington, D.C.
on behalf of

Wabtec Corporation

        Mickey Korzeniowski, Vice President,              79
          Components Group, Wabtec Corporation

                David Morrell          )
                                       ) - OF COUNSEL
                Kevin Garvey           )

Grunfeld, Desiderio, Lebowitz, Silverman &
Klestadt LLP
Washington, D.C.
on behalf of

Strato, Inc.

        Mike Foxx, CEO, Strato Inc.                       90

        Brian Cunkelman, President, Strato Inc.          100

        Dan Foxx, CIO, Strato Inc.                        --

                Andrew T. Schutz       )
                                       ) - OF COUNSEL
                Michael S. Holton      )


REBUTTAL/CLOSING REMARKS:

In Support of Imposition                                 139
  (Daniel B. Pickard and Robert E. DeFrancesco,
III, Wiley Rein LLP)
In Opposition to Imposition                              144
  (Andrew T. Schutz, Grunfeld Desiderio Lebowitz
Silverman & Klestadt LLP)

33

used to be much higher.  When I started at Amsted, we had over a thousand workers.  Over the course of the years, competition from Chinese imports have meant 725 fewer jobs and lower wages for our workforce.

We have also dropped in operating three full shifts to just one shift per day.  Amsted management regularly tells us the reason why there is less work to go around, and it's because of Chinese imports.

While there have been concerns about import competition for years, its impacts and layoffs that followed have really gotten worse in the last three years.  Because there is less production volumes, workers are often out of work for weeks and even months.  There is less production of the coupler parts.  Their compensation is tied to production quantities.  Our workers who make couplers are paid on a tonnage basis, which is a part of the piecework that we receive in addition to their hourly wages.  Lower production quantities means that our workers are making less and less. Because of this, workers are forced to leave their jobs to find other jobs to support their families.

Amsted has told us the reason why production is down in part is because they've moved much of their production to Mexico so that they can compete with Chinese imports.  Amsted opened its Mexican facility since I started working for Amsted years ago, but we did not see significant

34

job loss at the plant facility until around three years ago when I understood that Chinese imports started flooding into the United States. We only now make parts in Granite City that Amsted is unable to make in Mexico.

We have been faced with prolonged layoffs. In 2020, Amsted laid off 250 workers. To make sure that these workers could provide proper holidays for their families, myself and other USW leadership got to work raising money for our members who needed help. We directly contacted what we call Friends of Labor in our community. Due to their generosity, we raised over $17,000 so that we could use it to buy gift cards at a grocery store so that our members can afford a Christmas dinner with their families. This year, we are doing a toy drive so that these members can give gifts to their families.

But the reason why I'm here today is not to ask for charity. Our workers just want the opportunity to work and compete on a fair playing field. They are skilled, hard-working folks that want to provide for their families but are unable to do so because of unfairly traded Chinese imports. Historically, these jobs have provided a good living wage and benefits, and they have played an important role in the local economy. Our members simply want the opportunity, but without a significant change, their future looks bleak.